**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

JOHN F. WINKELMAN, JR.,

    Plaintiff,

    v.

JOSEPH HOSE, et al,

    Defendants.

Civil Action No. 14-259ERIE

ORDER ADOPTING REPORT AND RECOMMENDATION.

## I. INTRODUCTION

Before the Court is the Report and Recommendation (R&R) of Magistrate Judge Susan Paradise Baxter (ECF No. 89), which recommends that Defendants' motion for summary judgment (ECF No. 76) as to Plaintiff's sole remaining claim be granted and that this case be closed. After reviewing the Report and Recommendation, Plaintiff's Objections, and the record, the Court ADOPTS Magistrate Judge Baxter's R&R.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff John F. Winkleman, Jr., an inmate incarcerated at the Federal Correctional Institution, McKean (FCI McKean) during the relevant events, filed a *pro se* civil rights action on October 20, 2014. (ECF No. 5). Plaintiff named Defendants Joseph Hose, Jeffrey Huyck, William McKinney, and Michael Murphy, all employees of FCI McKean, alleging violations of his First, Eighth, and Fourteenth Amendment rights pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). (ECF No. 5 (Compl. at 1 ¶ 1)).

Plaintiff was an inmate employee at the FCI McKean law library during and prior to the events giving rise to this action. (ECF No. 79 at 2 ¶ 4). Plaintiff alleges that in February 2012 the

1

inmate employee in charge of creating the monthly law library work schedule cut Plaintiff's work hours from 160 hours to 116 hours and revoked Plaintiff's "early chow pass." (ECF No. 5 (Compl. at 2 ¶ 1)). After taking the issue to his then-supervisor, Mr. Smith, Plaintiff maintains that he continued to work and get paid for 160 hours,[1] though his schedule was never adjusted to reflect this. (ECF No. 5 (Compl. at 3 ¶ 3)).

In November 2013, Defendant Hose became the Education Department Supervisor, and in February 2014, Defendant Huyck became the direct supervisor of the law library and its employees. (ECF No. 79 at 2 ¶¶ 5-10). Plaintiff brought the issue of his uncorrected schedule and loss of his early chow pass to both Huyck and Hose (on February 22, 2014 and February 24, 2014, respectively), but neither Defendant adjusted Plaintiff's hours or reissued his chow pass. Once the March 2014 schedule was posted, Plaintiff was again assigned 116 hours, while other, less senior inmate employees "of another race" were each given extra hours in excess of the BOP limit of 160. (ECF No. 5 (Compl. at 3 ¶ 4)).

On March 4, 2014, following the posting of the March schedule, Plaintiff filed a BP-8 grievance regarding Defendants' failure to increase his hours for the month of March and requesting that the schedule be adjusted and that he be reissued his early chow pass. (ECF No. 5, Ex. 2 at 12 ("I am the orderly with the most seniority… and my hours were cut from 160 to 116 for the month of March")). Following his filing of the BP-8, Plaintiff alleges that (1) Defendant Huyck told Plaintiff that because Plaintiff had filed a grievance upon the Education Department, that he would make sure Plaintiff only got paid for 116 hours without any bonus pay; and (2) both Hose and Huyck threatened to inform the other inmate employees that Plaintiff was

---

[1] The inmate transaction records reflect that Plaintiff continued to receive a monthly salary of $40.80 through January 2014, $13.60 of which was entered each month as "bonus pay." *See* ECF No. 31, Ex. 2 at 22.

2

complaining about them. (ECF No. 5 (Compl. at 5 ¶¶ 10-11)).

On March 7, 2014, Plaintiff discovered that he did not receive his bonus pay for February 2014, which reduced his monthly pay from $40.80 to $20.40. (ECF No. 5 (Compl. at 5 ¶ 12)); (ECF No. 31, Ex. 2 at 22). The entry of February's pay occurred on March 6, 2014. (ECF No. 31, Ex. 2 at 22 (showing an "entered date" of 3/6/2014 at 10:11:31 AM for the pay period of February 2014)).

On March 21, 2014, Plaintiff alleges that a "secret meeting" took place between Defendants and the inmate in charge of creating the law library work schedule, and that later that day Defendants called a second meeting between themselves and all of the law library employees. (ECF No. 5 (Compl. at 6-7 ¶¶ 20-21)). Defendants maintain that they called the meeting with all law library employees (1) to explain Huyck's duties regarding the law library to the inmates; and (2) to allow the inmates to talk through and diffuse grievances amongst themselves and with the BOP staff with regards to the schedule. (ECF No. 79 at 3 ¶ 20). Plaintiff maintains that the purpose of the meeting could not have been to sort out the work schedule, because all of the other inmates' hours had already been corrected. (ECF No. 5 (Compl. at 7 ¶ 22)). Thus, Plaintiff inferred that the meeting was called in order for Defendants to pit the black inmate employees against him by exposing Plaintiff's complaints about his schedule compared to theirs. (ECF No. 5, Ex. 2 at 7); (ECF No. 90 (Plaintiff's Objections at 2 ¶ 5) ("Why was I their [*sic*]… my schedule was the only one that was not fixed.")).

On or around March 25, 2014, Plaintiff maintains that Defendants attempted to get Plaintiff to end his administrative remedy process by asking him to "sign off" on his BP-9 grievance, but that Plaintiff refused to do so. (ECF No. 5 (Compl. at 8 ¶ 25, Ex. 2 at 8)). After the March 25 meeting, Plaintiff claims that he was approached by a group of black inmates,

3

including the inmate who cut his hours and took his chow pass, and that the other inmates threatened Plaintiff with bodily harm should he continue complaining about him and "others of [their] race." (ECF No. 5 (Compl. at 8 ¶ 26). Following the March 25 encounter, Plaintiff requested to be transferred to another facility. (ECF No. 5 (Compl. at 8 ¶ 27)). The request was granted, and Plaintiff was transferred to FCC Hazelton. (ECF No. 79 at 7 ¶ 35). Plaintiff was later transferred again for unrelated reasons in March 2015 to FCI McDowell, where he is currently housed. (ECF No. 79 at 7 ¶¶ 36- 37).

Plaintiff's Complaint alleges that Defendants violated his First Amendment rights by, in retaliation for Plaintiff's filing a prison grievance, cutting his bonus pay and threatening to inform other inmates of his complaints; violated his Eighth Amendment rights by failing to protect him from other inmates' threats of bodily harm; and violated his Fourteenth Amendment rights by failing to protect him from racial discrimination. (ECF No. 5 (Compl. at 9)).

On February 29, 2016, the Court adopted Magistrate Judge Baxter's R&R granting partial summary judgment to Defendants Hose and Huyck, dismissing Defendants Murphy and McKinney, and dismissing Plaintiff's Eighth Amendment failure to protect claim and Fourteenth Amendment equal protection claim. *See* (ECF No. 49 (dismissing with prejudice Plaintiff's retaliation claim regarding his [February 2014] bonus[2]; Plaintiff's failure to protect claim against Defendants Murphy and McKinney; and all claims for monetary relief brought against Defendants in their official capacity)). Thus, Plaintiff's only claim remaining in this action is his First Amendment retaliation claim for nominal damages against Defendants Hose and Huyck.

---

[2] This Court's Order (ECF No. 49) incorrectly described Plaintiff's dismissed retaliation claim as regarding his *March 2012* bonus. The claim actually regarded his February 2014 bonus, as described in the Factual Background section, *supra*. Plaintiff's scheduled hours for March 2014 were the subject of his initial BP-8 prison grievance. *See* ECF No. 5, Ex. 2 at 13.

4

Specifically, Plaintiff's remaining claim is based on the allegation that, following Plaintiff's filing of prison grievances, Hose and Huyck threatened to inform other inmates of Plaintiff's complaints and thereafter did tell other inmates that Plaintiff complained about them. (ECF No. 5 (Compl. at 9 ¶ b)).

Both Plaintiff and Defendants filed motions for summary judgment as to the remaining retaliation claim. Plaintiff's motion was denied on January 18, 2017. (ECF No. 87 (adopting R&R recommending the denial of Plaintiff's Motion for Summary Judgment because Plaintiff did not identify any evidence to support his claim)). On February 14, 2017, Magistrate Judge Baxter issued the instant R&R recommending that this Court grant Defendants' motion for summary judgment and that this case be closed. (ECF No. 89). Plaintiff filed timely objections (ECF No. 90).

### III. DISCUSSION

#### A. Standards of Review

##### 1. Report and Recommendation

When a party objects to an R&R, the district court must review *de novo* those portions of the R&R to which objection is made. *See United States v. Raddatz*, 447 U.S. 667, 673 (1980); Fed. R. Civ. P. 72(b). However, to obtain *de novo* review, a party must clearly and specifically identify those portions of the R&R to which it objects. *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984). If the objections are made as to previously-decided motions, "the district court reviews the magistrate court's ruling on a non-dispositive motion under a clearly erroneous standard, while dispositive recommendations are reviewed *de novo*." *Kenny v. United States,* 489 F. App'x 628, 630, n.2 (3d Cir. 2012). The district court may accept, reject, or modify, in whole or in part, the findings and recommendations made by the Magistrate Judge. *Raddatz*, 447 U.S.

5

at 673-74.

### 2. Summary Judgment

Federal Rule of Civil Procedure 56(a) requires that summary judgment be granted when the moving party demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All inferences must be made in favor of the non-moving party, but both parties must produce evidence as to whether a genuine issue of material fact does or does not exist. Fed. R. Civ. P. 56(c)(1).

The initial burden on the movant to demonstrate an absence of genuine issue of material fact does not require him to produce specific affidavits or evidence negating the non-movant's claim. *Celotex Corp. v. Catlett*, 477 U.S. 317, 323 (1986). Rather, the movant's burden may be satisfied if he points out the inadequacy of the non-movant's evidence in light of the burden of proof forthcoming at trial. *Celotex*, 477 U.S. at 323. If the movant satisfies his burden, the burden then shifts to the non-movant, who must identify specific, admissible facts from the record which support his allegations that such a genuine issue of material fact does exist. *Celotex*, 477 U.S. at 325. For a fact to be taken as material, it must have the ability to affect the outcome of the suit given applicable law. *Matsushita*, 475 U.S. at 586. An issue of material fact is genuine if a fair-minded jury could reasonably return a verdict for the non-movant based on the evidence presented. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### B. Plaintiff's Retaliation Claim

A prisoner-plaintiff alleging retaliation must make a prima facie showing that (1) the conduct which led to the retaliation was constitutionally protected; (2) he suffered some adverse action at the hands of the prison officials; and (3) a causal link exists between the exercise of his constitutional rights and the adverse action taken against him. *Rauser v. Horn*, 241 F.3d 330, 333

6

(3d Cir. 2001) (internal citations omitted).

As to the first element, it is well-settled (and uncontested in the instant action) that filing a prison grievance is constitutionally protected conduct under the First Amendment. *See, e.g.*, *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). A plaintiff can satisfy the second requirement of adverse action by demonstrating that the retaliatory action was "sufficient to deter a person of ordinary firmness from exercising his constitutional rights." *See Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000). "An adverse consequence need not be great in order to be actionable; rather it need only be more than *de minimus*." *Watzon v. Rozum*, 834 F.3d 417, 423 (3d Cir. 2016). Finally, a plaintiff can establish the necessary causal link between his protected conduct and the adverse action by proving that his conduct was a "substantial or motivating factor" in the decision to discipline him. *Rauser*, 241 F.3d at 333 (internal citation omitted). If a plaintiff meets this initial burden, the defendant must then prove by a preponderance of the evidence that it would have taken the same action absent the protected conduct "for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334.

The R&R discusses three adverse actions: Plaintiff's loss of early chow pass, Plaintiff's loss of bonus pay, and Defendants' verbal threats to tell other inmates that Plaintiff was complaining about them. Plaintiff did not cite the loss of his early chow pass as adverse action in his Complaint; rather, it formed part of the basis of Plaintiff's initial BP-8 grievance. *See* (ECF No. 5 (Compl. at 9)). Plaintiff's claim regarding the loss of his bonus pay has already been dismissed. (ECF No. 49 (adopting ECF No. 45, Magistrate Judge Baxter's R&R recommending granting partial summary judgment to Defendants)). Plaintiff did not file objections to that R&R and he did not move this Court to reconsider its Order. Therefore, the only remaining claim for consideration is against Hose and Huyck for their alleged threats to tell other inmates that

7

Plaintiff was complaining. *See* (ECF No. 77 at 2); (ECF No. 45 at n.1). The R&R recommends that Plaintiff's retaliation claim regarding the alleged verbal threats fails to satisfy the adverse action element because threats are not sufficient conduct as a matter of law. (ECF No. 89 at 7).

The Third Circuit has repeatedly held that verbal threats alone do not constitute adverse action for the purposes of establishing a *prima facie* retaliation claim. *Chruby v. Kowaleski*, 534 F. App'x 156, 161 (3d Cir. 2013); *Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) (affirming summary judgment for Defendants where Defendants allegedly threatened Plaintiff by telling him that he was a "marked man" and that his "days were numbered"); *Burgos v. Canino*, 358 F. App'x 302, 306 (3d Cir. 2009) ("Mere threats do not constitute retaliation."); *Booth v. King*, 228 F. App'x 167 (3d Cir. 2007) ("Absent any allegation of physical harm, the defendants' verbal threats do not amount to a constitutional violation.").

Here, Plaintiff alleges that Defendants called the March 21 meeting to threaten him and that Defendants expressly threatened to tell other inmates about Plaintiff's complaints. Plaintiff has provided no evidence of these threats other than the allegations made in his Complaint and his own inferences. Even if Plaintiff could prove that the threats occurred, they would not amount to adverse action because Plaintiff cannot establish that the threats would deter a person of ordinary firmness from exercising his First Amendment right to file prison grievances in the future. As the Third Circuit has stated, an action must be "sufficiently serious," and "any use of words, including threatening language, does not constitute retaliatory action," particularly given the actions which courts *have* deemed sufficient in the prison context (e.g., several months in disciplinary confinement, denial of parole, and significant financial penalties). *Walker v. Mathis*, 665 F. App'x 140, 143 (3d Cir. 2016); *see Dunbar*, 487

8

F. App'x at 723; *Burgos*, 641 F. Supp.2d at 454. Moreover, Plaintiff's own deposition established that, notwithstanding Defendants' threats to tell other inmates of Plaintiff's complaints, those other inmates were already well aware of the issues Plaintiff had with the schedule and the loss of his chow pass, which were the impetus for the filing of his initial grievance. (ECF No. 78, Ex. 4 at 28).

Thus, the Court adopts the R&R with respect to its conclusion that verbal threats cannot alone constitute retaliation, and that the verbal threats described by Plaintiff do not satisfy the adverse action element of his claim.

### C. Plaintiff's Objections

In his "Complaint About the Report and Recommendation" (ECF No. 90), Plaintiff lists five objections as follows, which are addressed in their entirety:

**1.** *Objection 1*: **Causal Connection Between Plaintiff's Filing of His Grievance and the Alleged Threats Made by Defendants**

In his Objection #1, Plaintiff describes in more detail the meeting which took place between the FCI McKean Defendants and the law library inmate employees on March 21, 2014. Plaintiff notes that Mr. Murphy's statement during the meeting ("If you sue, you willn't [*sic*] find me") "connects all the prongs" and establishes that the meeting was called "so the black man could threaten the white man." This alleged statement was made by a party who has been dismissed from this action, and thus is irrelevant to Plaintiff's instant claim against Defendants Hose and Huyck.

**2.** *Objection 2*: **Request for Counsel and Discovery**

In his second objection, Plaintiff requests an attorney and additional discovery. These requests have previously been denied and are not properly before the Court. *See* (ECF No. 12

9

(denying without prejudice Plaintiff's Motion for Counsel)), (ECF No. 14 (denying Plaintiff's Motion to Reconsider the Court's denial of Plaintiff's Motion for Counsel)), (ECF No. 67 (denying without prejudice Plaintiff's Appealed Motion to Appoint Counsel)), (ECF No. 43 (denying Plaintiff's Motion for Discovery as premature)), and (ECF No. 68 (denying Plaintiff's Renewed Motion for Discovery as moot, given that Defendants have produced the requested discovery to Plaintiff)).

### 3. *Objections 3 and 4*: Violation of Standards of BOP Employee Conduct Sections 3420.09 and 3420.11

In his Objections #3 and #4, Plaintiff cites various sections of the Standards of Employee Conduct handbook for Bureau of Prisons (BOP) employees which he contends have been violated by Defendants. (ECF No. 90). However, these provisions are not legally relevant to Plaintiff's remaining First Amendment claim.

### 4. *Objection 5*: Plaintiff's Description of Acts that Constitute Adverse Action

#### *i. Defendant's Wood Shop Meetings*

In his final Objection, Plaintiff cites the "wood shop meetings" as retaliation, by which he refers to the meetings held between Defendants and the inmate who took Plaintiff's chow pass, and between Defendants and the law library employee inmates later that day. Plaintiff infers that the meetings were called in order for Defendants to threaten Plaintiff by pitting the black employees against him. Even if Plaintiff could prove that the meetings were called to threaten Plaintiff in retaliation for filing his grievance, the threats themselves are not sufficient to constitute adverse action as a matter of law. Accordingly, Plaintiff's objection as to the wood shop meetings is without merit.

#### *ii. Threats of Bodily Harm by Other Inmates Following Wood Shop Meetings*

10

In his Complaint, Plaintiff alleges that due to Defendants' direct actions, he was threatened with bodily harm at the hands of other inmates. (ECF No. 5 (Compl. at 9 ¶ d)). In Objection #5, Plaintiff reiterates that when, following the wood shop meetings, he "was cornered by the 3 blacks," their conduct constituted retaliation. (ECF No. 90). This was the basis of his Eighth Amendment failure to protect claim against Defendants Murphy and McKinney, which has been dismissed with prejudice. (ECF No. 77 (Defs. Omnibus Mot. For Summ. J.) (describing Plaintiff's claim that Murphy and McKinney "failed to protect him from other inmates who threatened to harm him because of his complaints about them)).

### *iii. Refusal to Fix Plaintiff's Work Schedule*

Finally, Plaintiff maintains that Huyck fixed the black employees' schedules and not his because of racial discrimination. (ECF No. 90). As it relates to the instant action, Defendant Huyck's decision not to adjust Plaintiff's schedule for March 2014 cannot constitute retaliation, whether or not it was a racially-motivated decision, because it occurred prior to Plaintiff's filing of his BP-8. Indeed, it formed part of the basis for the BP-8. The constitutionally protected action of filing a grievance could not have "caused" a *prior* scheduling change, and thus cannot support a claim for retaliation.

## IV. CONCLUSION

Plaintiff has not met his burden upon summary judgment to establish a genuine dispute of material fact regarding the remaining retaliation claim in this case. Having reviewed the R&R, the parties' briefs, Plaintiff's Objections, and all other material before the Court, it is hereby ordered that:

(1) The Court ADOPTS the R&R and GRANTS Defendants' Motion for Summary Judgment (ECF No. 76) for Plaintiff's remaining First Amendment retaliation claim.

(2) The Clerk of the Court shall send copies of this Order to Plaintiff and close this case.

**IT IS SO ORDERED.**

Dated this 13th day of July, 2017.

*Barbara J. Rothstein*

Barbara Jacobs Rothstein
U.S. District Court Judge